UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
JAMES R. CRAYTON,

                      Plaintiff,

       — against —

LONG ISLAND RAILROAD, MITCH MENACHEM,
in his official and individual capacities as an aider and
abettor; RITA LEGOTTI, in her official and individual
capacities as an aider and abettor; TERESA CONNETTA,
in her official and individual capacities as an aider and
abettor; KEVIN FEHN, in his official and individual
capacities as an aider and abettor, JANET MEROLA,
in her official and individual capacities as an aider and
abettor, CHRIS PAPANDREOU, in his official and
individual capacities as an aider and abettor; PAT FRIBL,
in her official and individual capacities as an aider and
abettor; and KAREN JOHNSON, in her official and
individual capacities as an aider and abettor;

                      Defendants.
----------------------------------------------------------------------X

**MEMORANDUM and ORDER**

05 CV 1721 (SLT)(SMG)

**TOWNES, United States District Judge:**

Plaintiff, James Crayton ("Plaintiff" or "Crayton"), brings this action against Defendants, Long Island Rail Road ("LIRR" or "Defendants"), alleging unlawful discrimination and retaliation on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq*., and in violation of 42 U.S.C. § 1981. Defendants move to dismiss Plaintiff's complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND[1]

A.  *Plaintiff's Work History*

Plaintiff James Crayton, an African-American male, was employed by LIRR in various positions over a twelve-year period.[2] (Compl. ¶ 14.) While employed by LIRR, Plaintiff was a member of the Transportation Communications Union ("TCU"). (Steven Drayzen Affidavit ("Drayzen Aff.") at ¶ 2.)[3] As a member of the TCU, the terms and conditions of Plaintiff's employment were covered by the Collective Bargaining Agreement ("CBA") in effect between the LIRR and the TCU. (Drayzen Aff. at ¶ 3.)

In February 1994, Crayton, who was then employed as a ticket clerk, was accused of mishandling $129.00 worth of negotiable instruments, tickets and/or checks. (Compl. ¶ 22.) Disciplinary charges were filed against him for "irregularities in the sale of tickets" after it was discovered that Plaintiff had underreported several cash fares he had collected. (Drayzen Aff. at ¶ 5.) A trial was held on these disciplinary charges in March 1994, and Plaintiff was dismissed as a result of the trials. (Drayzen Aff. at ¶¶ 7, 9.) An appeal by the union of Plaintiff's dismissal was denied and the dismissal upheld. (Drayzen Aff. at ¶ 9.) Plaintiff was removed from service

---

[1] The following facts are taken from the pleadings and the parties' supporting materials. *See Kamen v. AT&T Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[W]hen, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise.").

[2] In October 2004, following numerous displinary charges, Plaintiff was discharged from his employment by LIRR. The instant action was filed before Plaintiff was discharged. At a conference held on December 6, 2005, the Court determined that the "Complaint has nothing to do with the firing. It is the demotion that we are concerned with here." *See* Transcript of Dec. 6, 2005 Pre-Motion Conference, p. 10. Therefore, the Court's analysis of the facts is limited to the facts surrounding Plaintiff's demotion from a supervisor position, and not his discharge.

[3] In support of their motion to dismiss, Defendants submitted the affidavit of Mr. Steven Drayzen. Drayzen is the Director of Labor Relations for LIRR and responsible for the resolution of all grievances and discipline cases that are progressed to Labor Relations. He also serves as the "highest designated officer" under the Railway Labor Act (*i.e.,* the "last step" in the company's grievance procedure).

without pay. (Drayzen Aff. at ¶ 13.) In order to get his job back, Plaintiff had to sign a Last Chance Agreement, which "permanently disqualified him from holding any position which involved handling or accounting for Company funds or tickets." (Compl. ¶ 21; Drayzen Aff. at ¶ 12.) The Last Chance Agreement also required Plaintiff to admit full culpability for altering the prices on blank monthly tickets for the purpose of defrauding the railroad. (Drayzen Aff. at ¶ 11.) The five months that Plaintiff was held out of service was considered a displinary suspension. (Drayzen Aff. at ¶ 14.) Despite the suspension, Plaintiff alleges that "at all relevant times, Plaintiff performed his duties in a satisfactory manner, and his time and attendance were good." (Compl. at ¶ 16.)

During his employment, Plaintiff repeatedly complained about racial bias to his supervisors. (Compl. at ¶¶ 18, 20.) In September 2003, Plaintiff wrote to his Union Representative and complained of bias in the Crew Dispatcher Trainee Program. (Compl. at ¶ 18.) When he applied to be a crew dispatcher, Plaintiff alleges that he was "given a test that contained errors, and his training program was administered out of sequence." (*Id.*) He alleges that "none of the Caucasian trainees were subject to inaccurate tests, or improper training sequencing." (*Id.*) He alleges that "under racially suspect circumstances, [he] never became a Crew Dispatcher." (Compl. at ¶ 19.)

On October 29, 2003, Plaintiff was awarded a supervisor position in the LIRR's Travel Information Center ("TIC"). (Compl. ¶ 19; Drayzen Aff. at ¶ 20.) On January 12, 2004, Plaintiff was demoted, or disqualified, as the relief supervisor and removed from the position. (Compl. at ¶ 21; Drayzen Aff. at ¶ 21.) Plaintiff alleges he was demoted "in retaliation for his prior complaints of discrimination." (Compl. at ¶ 21.) LIRR alleges that Plaintiff was removed

from the position because once the TIC Department learned of the provision in the Last Chance Agreement that permanently disqualified Plaintiff from handling funds or tickets, they had to remove him. (Drayzen Aff. at ¶¶ 21, 23.) Defendant alleges that one of the essential duties of the supervisor position is the "processing of employee payroll" which "directly involves the proper accounting of Company funds." (Drayzen Aff. at ¶ 22.) Plaintiff alleges that LIRR's "asserted basis for removing Plaintiff from the relief supervisor position is pretextual because it was a relief job that involved inputting employee time into the computer" and "Plaintiff would have not have been handling funds." (Compl. at ¶ 25.)

B.    *The Terms of the Collective Bargaining Agreement* [4]

The removal of disciplinary charges from a TCU-represented employee's record is expressly covered by Article 52 of the CBA. (Drayzen Aff. at ¶ 15.) Article 52(f)(1) of the CBA provides that disciplinary suspensions and reprimands for "minor offenses" which are placed on an employee's discipline record "shall" be removed therefrom no less than three years following the date said discipline was assessed, while Article 52(f)(2) provides that disciplinary suspensions and reprimands assessed for infractions of operating rules which are placed on an employee's discipline record shall be removed therefrom no less than five years following the date the discipline was assessed. (Drayzen Aff. at ¶ 16; *see also* Ex. D, p. 67.)

---

[4] In his opposition papers, Plaintiff argues that the rules regarding the removal of the Last Chance Agreement that Defendants cite to justify their position were enacted in the 2000 CBA. He argues that the 1993 CBA was in effect at the time Plaintiff was disciplined. Defendants note that there was no CBA that became effective in 1993. Defendants also note that the rules regarding the purging of disciplinary records became effective in 1994, not in 2000 as Plaintiff claims. For the purposes of the Court's analysis, these arguments are irrelevant. The critical issue is that the removal of the Last Chance Agreement is governed by rules in a CBA, regardless of which one it is.

4

However, Article 52(f)(3) of the CBA expressly provides that an employee who receives a "displinary suspension as a result of an incident for which he or she was initially removed from service" shall, not less than eight years following final disposition of said incident, have the right to request that the LIRR review said suspension and remove it from their personnel record. (Drayzen Aff. at ¶ 17; *see also* Ex. D, p. 67.)

Plaintiff objected to the demotion and complained to the Union, claiming that the Last Chance Agreement should not have been in his file. (Drayzen Aff. at ¶ 24.) Plaintiff alleges that "Last Chance Agreements can be removed from an employee's file upon application of the union" but that "the union never pursued this on Plaintiff's behalf." (Compl. at ¶ 25.) Defendants contend that under Article 52(f)(3), the LIRR was not required to remove the Last Chance Agreement from Plaintiff's file and that it was incumbent upon Plaintiff to request that the Last Chance Agreement be removed. (Drayzen Aff. at ¶ 18.) No such request was ever made by Plaintiff or his union. (Compl. at ¶ 25; Drayzen Aff. at ¶ 18.)

C.   *Plaintiff's Appeal and Complaint to the New York State Division of Human Rights*

Plaintiff's union requested an appeal, under Article 54 of the CBA, of Plaintiff's demotion. (Drayzen Aff. at ¶ 25.) On April 22, 2004, an appeal meeting was held and the union was given the opportunity to present its position on the matter. (Drayzen Aff. at ¶ 26.) The union's appeal was denied. (Drayzen Aff. at ¶ 27.) Mr. Drayzen sent a letter to Arthur Maratea, General Chairman of the TCU, communicating his decision to deny the appeal and also stating that Plaintiff remained subject to the Last Chance Agreement "indefinitely." (Drayzen Aff. at ¶¶ 27, 29.)

5

In February or March of 2004, Plaintiff also filed a complaint with the New York State Division of Human Rights ("NYSDHR") complaining about his demotion. (Compl. at ¶ 28; Drayzen Aff. at ¶ 30.) Plaintiff argued in his complaint to the NYSDHR that "the information in my record was ten years old and according to procedure should no longer have been in my record." (Drayzen Aff. at ¶ 31.) Plaintiff argued that the Last Chance Agreement was a "pretext" for discrimination. (*Id.*)

## DISCUSSION

*A. Standard for motion to dismiss under Rule 12(b)(1)*

When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n.6 (2d Cir. 2001); *Kamen v. AT&T Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986). Under Rule 12(b)(1), the Court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

*B. The Railway Labor Act*

In 1926, Congress enacted the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq*., in order to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994). The RLA establishes a mandatory arbitral

mechanism to settle two classes of disputes. *See* 45 U.S.C. § 151a. "Major disputes" concern the formation of collective bargaining agreements or efforts to secure them. *Hawaiian Airlines*, 512 U.S. at 252; *see also Parker v. Metropolitan Transp. Authority*, 97 F. Supp. 2d 437, 445 (S.D.N.Y. 2000). The second class of disputes, known as "minor disputes," essentially involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Hawaiian Airlines*, 512 U.S. at 253. Thus, major disputes seek to create contractual rights, minor disputes seek to enforce them. *Parker*, 97 F. Supp. 2d at 446. All minor disputes must be adjudicated under RLA mechanisms, which include an employer's internal dispute-resolution procedures and an adjustment board established by the unions and the employer. *Hawaiian Airlines,* 512 U.S. at 253. In this case, Defendants contend that Plaintiff's claims constitute a "minor" dispute and, therefore, must be adjudicated under RLA mechanisms.

In *Hawaiian Airlines, Inc. v. Norris*, the Supreme Court held that an employee's claim under state law is preempted by the RLA "where the resolution of a state-law claim depends on an interpretation of the CBA." *Id.* at 261 (citing *Lingle v. Norge Div. Of Magic Chef, Inc.* 486 U.S. 399, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988)). On the other hand, if the claim does not require interpretation of the CBA, but rather "involves rights and obligations that exist independent of the CBA," the state law cause of action is not preempted. *Hawaiian Airlines*, 512 U.S. at 260. Courts have extended the rationale of *Hawaiian Airlines* to employee claims under federal law. *See, e.g., Monroe v. Missouri Pacific R.R. Co.*, 115 F.3d 514 (7th Cir. 1997 ); *Fry v. Airline Pilots Ass'n, Int'l*, 88 F.3d 831 (10th Cir. 1996).[5]

---

[5] In cases that involve claims arising under a federal statute (rather than state law), the issue of whether the RLA takes precedence over an independent federal claim is a question of "preclusion" and not "preemption." *Brown v. Illinois Central R.R. Co.*, 254 F.3d 654, 661-62 (7th Cir. 2001).

C.  *The Collective Bargaining Agreement Governs the Parties' Dispute*

This case turns on whether the mandatory arbitration provisions of the RLA preclude Crayton from bringing his claim in federal court. Defendants argue that Plaintiff's claims are precluded by the RLA because the resolution of his claims regarding his demotion from the TIC supervisor position depends on the interpretation of the CBA, specifically Article 52(f)(3), which governs the removal of disciplinary documents from an employee's file. Plaintiff argues that because his claim of discrimination was brought under the statutory authority of Title VII, his claim should not be precluded.

The leading case on this issue is *Brown v. Illinois Central R.R. Co.*, 254 F.3d 654 (7th Cir. 2001). In *Brown*, the Seventh Circuit stated: "A claim brought under an independent federal statute is precluded by the RLA only if it can be dispositively resolved through an interpretation of a CBA. This occurs 'only when a provision of the collective bargaining agreement is the subject of the dispute or the dispute is substantially dependent upon an analysis of the terms of a collective bargaining agreement.'" 254 F.3d at 668 (quoting *Loewen Group Intern., Inc. v. Haberichter*, 65 F.3d 1417, 1423 (7th Cir. 1995)). The Court in *Brown* then decided that the plaintiff's ADA claim could not be decided without interpreting a collective bargaining agreement, and was, therefore, precluded by the RLA. *Brown,* 254 F.3d at 668. The Court said, "Allowing Brown to bring his claim in federal court would sanction a judicial incursion into what the RLA defines as the exclusive province of the RLA arbitration boards — the resolution of claims by reference to the terms of CBAs." *Id*. at 664.

The issue, then, is whether the resolution of Plaintiff's discrimination claim is substantially dependent upon the interpretation of the CBA or could be dispositively resolved through an interpretation of a CBA. To analyze Plaintiff's discrimination claim, the Court turns to the traditional *McDonnell Douglas* burden-shifting framework.[6] To establish a prima facie case of employment discrimination, a plaintiff must show four things: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Therefore, for Crayton to establish a prima facie case of discrimination, he must satisfy the second prong and must show that he was qualified for the TIC supervisor position. In order to establish that he was qualified, Plaintiff must establish basic eligibility for the position at issue. *See Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 92 (2d Cir. 2001) ("[A]ll that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer."). Plaintiff will need to show that he was not "permanently disqualified" from the position because of the Last Chance Agreement. Whether or not the Last Chance Agreement should have been removed from Plaintiff's file turns on the interpretation of a provision of the CBA, specifically Article 52(f)(3), which governs the removal of disciplinary charges from an employee's file . Therefore, as in *Brown*, the Court finds that the dispute "is substantially dependent upon an analysis of the terms of a collective bargaining agreement" and Plaintiff's claims are precluded by the RLA.

---

[6] The standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981. *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

By finding that Crayton's claims are precluded, the Court rejects Plaintiff's argument that the RLA does not preclude jurisdiction over any Title VII claim. To the contrary, numerous Courts have held that the RLA precludes claims brought pursuant to all manner of federal civil rights statutes, including Section 1981 and Title VII, as well as the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). *See Parker,* 97 F. Supp. 2d at 448 ( ADA, ADEA claims precluded); *see also Brown*, 254 F.3d at 668 (ADA claim precluded); *Lee v. Union Pacific R.R. Co.,* No. 02-1549, 2004 WL 2937389, at *1 (N.D. Ill. July 29, 2004) (§ 1981 race discrimination claim precluded); *Moss v. Norfolk Western Ry. Co.*, No. 02-74237, 2003 WL 21817127, at *5 (E.D. Mich. July 22, 2003) (Title VII race discrimination claim precluded); *Caldwell v. Norfolk Southern Corp*., No. 96-443P, 1998 WL 1978291, at *5 (W.D.N.C. March 3, 1998) (Title VII race discrimination claim precluded); *Everette v. Union Pacific R.R.*, No. 04-5428, 2006 WL 2587927, at *4 (N.D. Ill. Sept. 5, 2006) (Title VII and §1981 claims precluded); *Miller v. American Airlines, Inc.*, No. 03-7756, 2004 WL 2203425 (N.D. Ill. Sept. 29, 2004) (ADEA claim precluded).

Furthermore, Plaintiff bases his argument primarily on *McAlestar v United Airlines, Inc*., 851 F.2d 1249 (10th Cir. 1988),[7] which was decided before *Hawaiian Airlines* and the cases cited above. Recently, Courts have been strongly in favor of arbitration. In *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001), the Supreme Court affirmed that it has been "clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context." The Court noted that

---

[7] Besides *McAlestar*, Plaintiff cites only one other case in support of this argument, a district court case from Kansas: *Mosqueda v. Burlington Northern Santa Fe Ry.*, 981 F. Supp. 1403 (D. Kan. 1997). Needless to say, Tenth Circuit decisions are not binding on this Court.

arbitration agreements could be enforced "without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law." *Id.* In *Collins v. New York City Transit Authority*, 305 F.3d 113, 119 (2d Cir. 2002), the Second Circuit also endorsed the use of arbitration in employment disputes.

In *Parker*, the Southern District found that because Plaintiff's ADA and ADEA claims were "inextricably intertwined" with interpretation of a collective bargaining agreement, they were precluded by the RLA and would need to be arbitrated under RLA mechanisms. 97 F. Supp. 2d at 447. Following the approach of the Courts in *Brown* and *Parker*, this Court finds that Plaintiff's claims are precluded by the RLA. Therefore, the Court has no subject matter jurisdiction over Plaintiff's claims and Plaintiff's claims are dismissed.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss Plaintiff's claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is GRANTED. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       December 28, 2006

/s/
SANDRA L. TOWNES
United States District Judge